In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3333

JOHN H. CRICHTON, JR.,
on behalf of himself and all
others similarly situated,

*Plaintiff-Appellant,*

*v.*

GOLDEN RULE INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06 C 264—**G. Patrick Murphy**, *Judge.*

ARGUED MARCH 31, 2008—DECIDED AUGUST 5, 2009

Before KANNE, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* John Crichton, Jr., sued Golden
Rule Insurance Company asserting three fraud-based
claims. The district court dismissed one claim with preju-
dice and gave Crichton an opportunity to replead the
other two. That effort was unsuccessful; the district
court held that the allegations in the remaining two
claims failed to state a claim for relief and dismissed the

case in its entirety. Crichton's appeal requires us to consider three questions: (1) whether Crichton had standing to bring a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILL. COMP. STAT. 505/2 (2006), and somewhat relatedly, whether he may maintain a claim under Florida's analog to that act, *see* FLA. STAT. ANN. § 501.201 (West 2006); (2) whether Crichton adequately pleaded a claim for common-law fraud; and (3) whether Crichton adequately pleaded a RICO (Racketeer Influenced and Corrupt Organizations Act) claim. We answer each question "no" and affirm the judgment of the district court.

## I. Background

Florida resident John Crichton began purchasing group health insurance from Golden Rule in 1995 under a master policy offered only to members of the Federation of American Consumers and Travelers ("the Federation"), a nonprofit organization that provided its members with (among other services) discounts on insurance through group-buying power. Crichton renewed his insurance every year through 2004. In 2002 he filed a complaint against Golden Rule in the Circuit Court of Madison County, Illinois, seeking to represent a nationwide class of Federation members who bought insurance from Golden Rule. His lawsuit alleged violations of the ICFA and, if his proposed class was certified, a host of other state consumer-fraud statutes. Crichton later amended his suit to add the Federation as a defendant. The Federation sought and received summary judgment in its

favor and successfully defended that judgment on appeal. *See Crichton v. Golden Rule Ins. Co.*, 832 N.E.2d 843, 851-54 (Ill. App. Ct. 2005). Crichton's claims against Golden Rule were dismissed without prejudice based on forum non conveniens. (Golden Rule is an Illinois corporation with its principal place of business in Indiana.)

Crichton next proceeded to the District Court for the Southern District of Illinois where he filed a complaint against Golden Rule under the diversity jurisdiction of 28 U.S.C. § 1332(d). He reasserted his claim for an alleged violation of the ICFA (and his class claim under the consumer-fraud statutes of other states) and also alleged a claim of common-law fraud. He later amended his complaint to include a third count, a RICO claim. The gist of all three claims was that Golden Rule had induced him to purchase insurance by an artificially low introductory premium and that Golden Rule failed to inform him that the cost of his renewal premiums would escalate dramatically because of Golden Rule's practice of closing blocks of insurance to new enrollees.

Golden Rule moved to dismiss Crichton's amended complaint under Rule 12(b)(6) of the *Federal Rules of Civil Procedure.* The district court granted the motion with prejudice on the ICFA count but without prejudice on the common-law fraud and RICO counts. Crichton then filed his second amended complaint, repleading his common-law fraud and RICO allegations (this time with greater specificity in an effort to meet the requirements of Federal Rule of Civil Procedure 9(b)); he also repleaded, "for the record," the ICFA claim. Golden Rule

once again moved to dismiss. The district court dismissed Crichton's common-law fraud and RICO claims with prejudice for failure to state a claim, ignored the already dismissed-with-prejudice ICFA claim, and entered final judgment in favor of Golden Rule.

## II. Discussion

We review the district court's order dismissing Crichton's claims de novo. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007), and will affirm the dismissal if he did not plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, Crichton's fraud-based claims are subject to Rule 9(b)'s heightened pleading requirements, which means that the circumstances constituting the fraud must be pleaded "with particularity." FED. R. CIV. P. 9(b).

As an initial matter, the parties debate whether the amended or second amended complaint is the operative complaint for review. As we have noted, after the district court dismissed the ICFA count in the amended complaint with prejudice, Crichton repleaded it in his second amended complaint "for the record," adding certain facts and rearranging the nature of his individual and class claims under the Florida statutory analog. On appeal Golden Rule argues that the facts Crichton added in the second amended complaint are out of bounds on our review of the earlier dismissed-with-prejudice

ICFA claim, citing *Tricontinental Industries, Ltd. v. Price-waterhouseCoopers, LLP*, 475 F.3d 824 (7th Cir. 2007).

In *Tricontinental*, the defendants moved to dismiss the plaintiffs' amended complaint, and while that motion was pending, the plaintiffs sought and obtained leave to file a second amended complaint adding two new claims. The plaintiffs' second amended complaint, however, not only added the proposed new claims but also supplemented the allegations in the original claims. In dismissing the claims asserted in the plaintiffs' amended complaint, the district court declined to consider the supplemental allegations in the second amended complaint because leave to replead those original claims had not been granted. The court later dismissed the additional claims in the second amended complaint. On appeal we confined our review of the dismissed claims from the first amended complaint to the allegations in *that* complaint, rejecting the plaintiffs' argument that we should consider the supplemental allegations contained in the second amended complaint. *Id.* at 838 n.8. We reasoned that because the district court had only granted leave to add two new claims, not to replead the original claims, it would be inappropriate to consider on appeal the supplemental allegations contained in the second amended complaint. *Id.*

This case is similar. The ICFA claim in Crichton's amended complaint was dismissed with prejudice; Crichton was granted leave to replead only his common-law fraud and RICO claims. Repleading (and attempting to bolster) his ICFA claim in the second amended com-

plaint "for the record" was thus gratuitous, and the district court was within its discretion to ignore it. Accordingly, we will review the common-law fraud and RICO allegations contained in the second amended complaint and confine our review of the ICFA claim to the allegations in the amended complaint.

## A. Standing under the ICFA

The district court dismissed Crichton's claim under the ICFA because Crichton—a resident of Florida—lacked standing to sue under the Illinois statute. The court applied the test announced by the Illinois Supreme Court in *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005), which severely limited the extraterritorial reach of the ICFA. The court held in *Avery* that nonresident plaintiffs may sue under the ICFA only if the circumstances relating to the alleged fraudulent transaction occurred mostly in Illinois. 835 N.E.2d at 852-53.

More specifically, the Illinois Supreme Court held that the ICFA did not create a cause of action for fraudulent acts that had little or no connection to the state of Illinois. *Id.* Accordingly, for a nonresident plaintiff to have standing under the Act, the court required that "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id.* at 853-54. The court acknowledged that this was not a bright-line rule but rather a highly fact-bound inquiry in which no single factor would be dispositive. *Id.* at 854.

The facts of *Avery* help illustrate the test's operation. There, the nonresident plaintiffs were consumers who alleged that their automobile insurer had engaged in fraudulent acts by supplying substitute parts on insured repairs. Although the insurer had its headquarters in Illinois, the court held that the consumers could not avail themselves of the ICFA based on that fact alone. *Id.* Most of the relevant circumstances underlying the alleged fraudulent activity in *Avery* had no connection to Illinois: The consumers did not reside there; they received repair estimates in their home states; those repairs were made elsewhere; the alleged deception itself took place in states other than Illinois; and the plaintiffs communicated with local agents, not the home office in Illinois. *Id.*

*Phillips v. Bally Total Fitness Holding Corp.*, 865 N.E.2d 310 (Ill. App. Ct. 2007), provides another example of how the *Avery* test operates. There, two nonresident plaintiffs alleged that a health-club chain headquartered in Illinois had violated the Act by refusing to cancel their memberships. But as in *Avery*, the location of the health club's headquarters was not dispositive. *Id.* at 315-16. Because the plaintiffs resided elsewhere, purchased their club memberships and used facilities in their home states, and dealt with collection agencies outside Illinois, the court held they lacked standing to sue under the ICFA. *Id.*

We reach the same conclusion here. Crichton resides in Florida, received promotional insurance materials there, entered into and renewed his insurance there, submitted claims there, and was allegedly deceived there.

Golden Rule's principal place of business is in Indiana, not Illinois; and although it maintains a "home office" in Illinois, from which it issues insurance policies, that alone is not enough, under *Avery*, to confer nonresident standing on Crichton to sue under the ICFA. On the totality of the facts alleged here, we agree with the district court that the circumstances of the alleged fraudulent activity did not occur "primarily and substantially in Illinois." Accordingly, Crichton lacks standing to sue under the ICFA.

The district court also held that to the extent that Crichton was asserting a claim under Florida's consumer-fraud statute, the claim must be dismissed because that statute does not permit suits against insurers. *See* FLA. STAT. ANN. § 501.212(4) (West 2006) ("This part does not apply to . . . (4) [a]ny person or activity regulated under laws administered by . . . (a) [t]he Office of Insurance Regulation of the Financial Services Commission; . . . or (d) [a]ny person or activity regulated under the laws administered by the former Department of Insurance . . . ."). This determination was manifestly correct; Golden Rule is an insurer under Florida law. *W.S. Badcock Corp. v. Myers*, 696 So. 2d 776, 782-83 (Fla. Dist. Ct. App. 1996) (citing *Prof'l Lens Plan, Inc. v. Dep't of Ins.*, 387 So. 2d 548, 550 (Fla. Dist. Ct. App. 1980) and requiring that an insurance provider have "(1) [a]n insurable interest; (2) [a] risk of loss; (3) [a]n assumption of the risk by the insur[er]; (4) [a] general scheme to distribute the loss among the larger group of persons bearing similar risks; [and] (5) [t]he payment of a premium for the assumption of risk"). Crichton's statutory consumer-fraud claim—

under the ICFA or its Florida analog—was properly dismissed.

## B. Common-Law Fraud

The district court also properly concluded that Crichton failed to state an actionable claim of common-law fraud.[1] Crichton alleged that Golden Rule should have disclosed that the renewal premiums on its group health plans would ratchet upward throughout the life of his policy because of its underwriting practice of closing blocks of insurance to new enrollees and that its failure to do so was fraudulent. These allegations amount to a claim of fraudulent concealment or fraud-by-nondisclosure; such a claim requires a duty to disclose on the part of a defendant. *See, e.g.*, *Connick v. Suzuki Motor*

---

[1] Conflicts-of-law analysis under Illinois law—which is the appropriate substantive law of the district court's forum state, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 71-80 (1938); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (applying *Erie* to conflicts of laws)—might suggest that Florida's common law should apply to this claim because Florida has the most significant relationship to the transaction. *See Ingersoll v. Klein*, 262 N.E.2d 593, 595-96 (Ill. 1970) (adopting a most-significant-contacts rule in Illinois after discarding the doctrine of *lex loci delicti*). There is, however, no conflict between Florida and Illinois law in this area; the district court properly chose to apply Illinois common law, the law of the forum state. *See, e.g.*, *Int'l Adm'rs, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985).

*Co.*, 675 N.E.2d 584, 593 (Ill. 1996); *AMPAT/Midwest, Inc. v. Ill. Tool Works Inc.*, 896 F.2d 1035, 1040 (7th Cir. 1990) (applying Illinois law). Where, as here, there is no fiduciary relationship between the parties, *see Nielsen v. United Servs. Auto. Ass'n*, 612 N.E.2d 526, 531 (Ill. App. Ct. 1993) ("In Illinois, there is no fiduciary relationship between an insurance company and an insured."); *Overbey v. Ill. Farmers Ins. Co.*, 525 N.E.2d 1076, 1084 (Ill. App. Ct. 1988) (same), a duty to disclose may arise under Illinois law if the defendant makes an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading "half-truth," *see Heider v. Leewards Creative Crafts, Inc.*, 613 N.E.2d 805, 811 (Ill. App. Ct. 1993); *Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 149 (N.D. Ill. 2005).

Here, Crichton alleged that Golden Rule made several statements that he claims qualify as deceptive half-truths giving rise to a duty to disclose: It referred to its insurance as "group" insurance while failing to disclose the effect of its practice of periodically closing blocks of insurance to new members; it issued insurance certificates explaining the connection between claims costs and the amount of time an insurance certificate has been in place, but did not disclose its underwriting practice of closing blocks of insurance; and it sent letters announcing premium increases without explaining that the "real reason" for those increases was the closure of blocks of insurance to new enrollees. Critically, however, Crichton's allegations do not remotely suggest that any of these communications from Golden Rule purported to be an explanation of all of the underwriting factors that might

affect Crichton's insurance premiums. By labeling its insurance as "group" insurance, offering a summary of its claims practices, and announcing annual premium increases, Golden Rule did not purport to explain the "whole truth" of its underwriting practices. *See Apotex*, 229 F.R.D. at 149 (noting that "a summary is just that, a summary" and holding that such a summary "does not suggest fraud"). That is, none of these alleged statements to certificate-holders was represented to be a comprehensive explanation of all factors affecting Golden Rule's insurance premiums. Accordingly, there are no allegations giving rise to a duty to disclose, and Crichton's common-law fraud claim was properly dismissed.

## C. RICO Claim

Finally, the district court properly dismissed Crichton's claim under the RICO statute, 18 U.S.C. §§ 1961-1968. RICO prohibits "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

We have held that "[a] RICO complaint must identify the enterprise." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995). Crichton identifies the enterprise as the Federation. Alternatively, Crichton alleges that Golden Rule and the Federation, together, as two persons associated in fact, *see* 18 U.S.C. § 1961(4), made up the RICO enterprise. An association-in-fact enterprise theory requires that the association-in-fact "enterprise" and the

person sought to be held liable be sufficiently distinct. *See Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 747 F.2d 384, 401-02 (7th Cir. 1984); *see also Richmond*, 52 F.3d at 647. This is because RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

As to the first of these theories,[2] the parties debate on appeal whether Crichton's allegations are sufficient to state a claim that Golden Rule "conduct[ed] or participat[ed] . . . in the conduct of [the Federation's] affairs." If not, there is no need to address the remaining elements of a RICO claim under § 1962(c). *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985) (requiring "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" to prove a violation of § 1962(c)); *see also Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) (same).

Crichton alleges that Golden Rule conducted and partici-pated in the Federation (the alleged RICO enterprise) by

---

[2] Crichton notes that the district court did not readdress this theory in its second order. Golden Rule responds that the district court did not do so because it had already rejected this theory in its first order. True, but the district court dismissed this claim without prejudice, allowing Crichton to replead it. The district court's failure to revisit this theory of potential RICO liability in its second order does not affect our review, however; we may affirm on any basis in the record. *E.g., Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

helping the Federation draft new bylaws, assisting it in setting the dues that Golden Rule would subsequently collect from certificate-holders on its behalf, and controlling the marketing information disseminated by the Federation about Golden Rule's health-insurance products. These allegations are insufficient to state a RICO claim. The statute does not penalize tangential involvement in an enterprise; a plaintiff must plead and prove that a defendant took some part in directing or conducting the alleged "enterprise" such that it "participate[d] in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 185; *see also Goren*, 156 F.3d at 727. Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *Goren*, 156 F.3d at 727.

Here, Crichton has done little more than plead facts suggesting the existence of the marketing relationship between the Federation and Golden Rule. Assisting in the setting and collection of membership dues on the Federation's behalf and controlling the content of its own insurance promotional materials are activities consistent with the existence of a business partnership, not the prototypical RICO violation in which the defendant seizes control of an enterprise to accomplish an illegal purpose by using the enterprise's resources, contacts, and appearance of legitimacy. *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997). Likewise, that Golden Rule is alleged to have assisted the Federation in redrafting its bylaws suggests only that Golden Rule

performed a service for the Federation. These allegations, taken individually or together, are insufficient to state a claim that Golden Rule controlled the operation or management of the Federation.

For similar reasons, Crichton's allegations under the alternative theory of an association-in-fact enterprise are also insufficient. As we have noted, an association-in-fact enterprise must be meaningfully distinct from the entities that comprise it such that the entity sought to be held liable can be said to have controlled and conducted the enterprise rather than merely its own affairs. *See Reves*, 507 U.S. at 185*; Haroco*, 747 F.2d at 401-02; *Richmond*, 52 F.3d at 647.

Here, Crichton has done no more than describe the ordinary operation of a garden-variety marketing arrangement between Golden Rule and the Federation. His allegations of the Federation's role suggest it was merely a conduit for the sale of Golden Rule's insurance. This is not what RICO penalizes. *See Fitzgerald*, 116 F.3d at 227. What Crichton alleges here is a fraud perpetrated by Golden Rule, not an association-in-fact enterprise directed and controlled by Golden Rule. That is, Crichton's claim "begins and ends" with the fraud allegedly committed by Golden Rule. *Richmond*, 52 F.3d at 647. This is insufficient to state a RICO claim based on an association-in-fact enterprise.

We also note that Crichton failed to adequately plead an association-in-fact enterprise because he has not pleaded an organizational structure or hierarchy for the alleged association-in-fact enterprise. *Stachon v. United*

*Consumers Club, Inc.*, 229 F.3d 673, 675-77 (7th Cir. 2000); *Richmond*, 52 F.3d at 645-46. His allegations describe nothing more than the terms of an agreement between Golden Rule and the Federation to market Golden Rule's health insurance to the Federation's members. A RICO enterprise is more than a combination of persons who commit alleged predicate acts of racketeering; "there must be 'an organization with a structure and goals separate from the predicate acts themselves.'" *Stachon*, 229 F.3d at 675 (quoting *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991)). Allegations of this sort are missing here. Accordingly, the district court was right to dismiss Crichton's RICO claim.

AFFIRMED.